# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| RxSport Corp. | : | |
| | : | Case No. 19-10187 (ELF) |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S MOTION FOR ENTRY OF A FINAL ORDER AUTHORIZING THE DEBTOR TO: (I) OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 364 AND 363 OF THE BANKRUPTCY CODE, (II) ENTER INTO VARIOUS LOAN DOCUMENTS, AND (III) GRANTING LIENS ON PROPERTY OF THE ESTATE THAT IS NOT OTHERWISE SUBJECT TO A LIEN PURSUANT TO SECTION 364(c)(2) OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC <u>STAY TO IMPLEMENT THE FINANCING TERMS</u>**

RxSport Corp. (the "<u>Debtor</u>"), by and through its undersigned counsel, hereby moves for post-petition financing and other related relief as above captioned, and in support hereof, states as follows:

### Introduction

By this motion (this "<u>Motion</u>"), the Debtor is requesting the entry of a final order (the "<u>Final DIP Order</u>") authorizing the Debtor to obtain and ratify post-petition financing from two separate sources pursuant to the terms more fully described below.

First, the Debtor wishes to ratify post-petition financing provided by its President, David Chandler ("<u>Chandler</u>"). As more fully described below, the Debtor expected to have the consent of its secured lender to use cash collateral to fund its operations. Initially, that anticipated consent was delayed, but then ultimately denied. As a result, and without knowledge that Bankruptcy Court approval was required, Chandler advanced the sum of $30,415.06 to or for the benefit of the Debtor at various times post-petition to fund actual and necessary costs and

Page | 1

expenses that had to be paid by the Debtor (the "Chandler Advances").  The Debtor seeks to have such advances treated as an administrative expense claim pursuant to Bankruptcy Code Sections 364(b) and 503(b)(1).

Second, the Debtor seeks to enter into a Promissory Note (the "Note") and Purchase Money Security Interest Agreement (the "Security Agreement;" together with the Note, the "Loan Documents") to obtain a post-petition line of credit in the maximum principal amount of $400,000.00 (the "Loan").  As more fully set forth below, the proceeds of the Loan will be used to fund the purchase of wood that is indispensable for the Debtor's production of baseball bats.  The Loan proceeds also used to fund working capital needs if and as they arise.  Also as more fully set forth herein, $141,845.71 of the Loan has already been advanced.  The Loan will be collateralized by the wood inventory that is purchased with the proceeds from the Loan, along with the baseball bat products created therefrom, the accounts receivable generated from the sale thereof and the cash proceeds therefrom.

The Note, Security Agreement and the Final DIP Order are attached as Exhibits "A," "B" and "C," respectively.  Below is the Debtor's Concise Statement pursuant to Bankruptcy Rule 4001(c)(1)(B) with cross references to the Note, Security Agreement ("SA") and Final DIP Order ("Ord").

### Bankruptcy Rule 4001(c)(1)(B) Concise Statement

The Loan transaction, if approved by this Court, provides for the following:

a. *Borrower:*   RxSport Corp. (i.e., the Debtor).

b. *Lender:*  Disrupt Sourcing, LLC ("DSL").

c. Loan *Amount:*   Up to $400,000.00.

d. *Use of Proceeds:* The proceeds of the Loan shall be used to purchase wood and for other necessary working capital needs.

e. *Interest Rate: 8%* per annum.  *Note at "Payment" Section.*

    f.    *Default Interest Rate:* 18% per annum. *Note at "Interest After Default" Section.*

    g.    *Loan Payments:* All principal advanced and accrued interest shall be payable on the one-year anniversary of the Note—i.e., February 12, 2020; provided that the Debtor can prepay all or any portion of the Loan amount at any time without penalty. *Note at "Payment" and "Prepayment" Sections.*

    h.    *Loan Term*: one year—i.e., until February 12, 2020. *Note at "Payment" Section.*

    i.    *Grant of Liens:* Pursuant to Bankruptcy Code Section 364(c)(2), the Debtor seeks authority to grant a first priority lien in favor of DSL on the following post-petition assets, which are not subject to a lien in favor of any other party (the "DIP Collateral"): "All raw materials and inventory to which Debtor has acquired and taken possession and legal title to for the purpose of producing bat inventory to meet customer orders and general demand, together with all manufactured bat inventory derived from such raw materials, together with any replacements, renewal, substitutions, additions or otherwise, and all additions and accessions thereto and all proceeds thereof together with any and all Accounts, Accounts Receivables, Contracts, General Intangibles. Equipment, Chattel Paper and "Instruments" (as such terms are now or hereafter defined in the Pennsylvania Uniform Commercial Code, as amended), now owned or hereafter acquired." *SA at Section 1.1.*

    j.    *Events of Default:* Events of default include (i) failure to make payments within ten days of their due date; (ii) failure to comply with the Loan Documents within thirty days after written notice; (iii) untrue representations or warranties; (iv) dissolution or termination of Debtor's existence; (v) change in ownership of the Debtor; or (vi) the collateral is transferred, lost stolen, damaged or seized. *Note at "Events of Default" and SA at Section 2.*

## Jurisdiction & Venue

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105, 361, 362, 363, 364

and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

### The Debtor's History

4. The Debtor is a baseball bat and baseball accessory company that is known primarily for its prominent and widely used line of "Chandler Bats".

5. The Debtor was formed by David Chandler in 2009 based upon Mr. Chandler's knowledge and expertise in the area of wooden furniture design and manufacturing. Mr. Chandler's vision was to use his expertise in wood products to develop a safer, more durable and all-around better maple wood baseball bat as compared to traditional maple wood bats, which had tendencies to easily break.

6. The Debtor's wooden baseball bat technology and product that was launched in 2010 gained immediate acceptance in the professional ranks by becoming Major League Baseball certified, with 32 professional players using the Chandler Bat. In the spring of 2015, Chandler Bats were ordered by nearly one half of all Major League Baseball players. Today, some of the most widely known and prolific hitters in Major League Baseball choose Chandler bats—even without endorsement deals from the Debtor, as most of its competitors require.

7. Initially, the Debtor obtained funding from small investors, but the ongoing and increasing need to fund its quickly growing business and expenses resulted in the Debtor obtaining a $500,000 secured loan from Ben Franklin Technology Partners of Southeastern PA in November of 2013. Both before and after this time frame, the Debtor continued to take

on additional equity investors, but the ongoing infusion of capital and debt proved to be insufficient to meet the ever-growing cash demands of the business, not to mention the need to satiate the growing pains of a small start-up business.

8. Around this same time, the Debtor became embroiled in a disgruntled shareholder dispute that evolved into a lawsuit in 2016, the practical effect of which was to prevent the Debtor from availing itself of any additional equity raises.

9. After successfully staving off hostile attempts to acquire the company, the Debtor's secured debt ultimately was acquired by La Potencia, LLC (the "Prepetition Secured Lender"), a friendly private lender, who had a vested interest in seeing the company succeed. The Prepetition Secured Lender has a blanket lien on all of the Debtor's prepetition personal property.

10. Into 2018, the Debtor expanded its product lines beyond baseball bats and broadened its target beyond professional athletes to youth baseball, including opportunities to sell in mass quantities to widely known retail outlets. But, with increased product demand came a commensurate need for additional funding and, as a result, in 2018, the Debtor availed itself of receivables financing, which, while addressing the Debtor's immediate cash needs, ultimately exacerbated the Debtor's cash flow challenges due to the costs and pricing associated with those financing transactions.

11. Without an immediate solution to address its financial challenges adequate to bridge its operations to another baseball season as well as the launching of its youth and adult baseball bats and accessories beyond its niche in professional sports, the Debtor resorted to

the within chapter 11 filing to reorganize its affairs.

**The Bankruptcy Case**

12. On January 10, 2019 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

13. As of the date of the filing of this Motion, no official committee of creditors has been appointed or designated.

14. Upon the filing of its bankruptcy case, the Debtor believed its Prepetition Secured Lender would not only allow the Debtor to use cash collateral, but also extend post-petition financing to meet the Debtor's immediate cash needs that were beyond its anticipated cash collections from operations.

15. With ongoing and unexpected delays in getting a response from the Prepetition Secured Lender, Chandler, not knowing of the need for Court approval, began advancing the Chandler Advances for the purposes and in the amounts set forth on Exhibit "D".

16. Unfortunately, after approximately a full month into the case, the Debtor learned that the Prepetition Secured Lender would not allow the Debtor to use cash collateral or to extend additional loans to the Debtor. As a result, the Debtor is seeking post-petition financing from DSL pursuant hereto to fund its acquisition of wood and for other working capital needs.

**Relief Requested**

17. The Debtor requests that this Court ratify the Chandler Advances by allowing Chandler to have an administrative expense claim pursuant to Bankruptcy Code Section 503(b)(1) in the amount of $30,415.06.

18. The Debtor further requests that this Court authorize it to obtain secured post-petition financing not to exceed an aggregate principal amount of $400,000 pursuant to the terms of this Motion, the Loan Documents and the Final DIP Order. The proposed financing will be provided by DSL.

19. Specifically, the Debtor requests that the Court authorize it to: (i) obtain loans and advances and such other financial accommodations in an aggregate principal amount not to exceed $400,000; (ii) enter into the Loan Documents and to perform such other and further acts as may be required in connection with the Loan Documents, (iii) grant a first priority lien on the DIP Collateral in accordance with the Loan Documents and the Final DIP Order to secure any and all of the Loan obligations; and (iv) modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and DSL to implement the terms of the Final DIP Order.

20. It should be noted that DSL already has advanced the sum of $141,845.71 as follows: (a) $6,346 for the Debtor's insurance renewal; (b) $44,289 for an order of wood; and (c) $45,404.55 for an order of wood; and (d) $45,806.16 for an order of wood. The foregoing advances are part of the Loan, if approved by this Court.

21. The Debtor is seeking to obtain/ratify the Loan from DSL pursuant to Bankruptcy Code Section 364(c)(2) to grant a first priority lien in favor of DSL on the DIP Collateral, which consists of property of the estate that is not subject to a lien, as required by DSL.

### The Loan Should Be Authorized

22. The Debtor's intended use of the proceeds of the Loan is to fund the purchase of

wood, which is used to produce baseball that are at the heart of the Debtor's business.

23. The Debtor also might, from time to time, have working capital needs that also could be funded from the Loan. It is important to point out that all advances under the loan are at the discretion of DSL, which is to say that the Debtor has to demonstrate to DSL that any Loan advances being sought are in furtherance of the Debtor's business.

24. The Debtor submits that obtaining the Loan and the limited collateral being used to secure the Loan reflect the exercise of its sound business judgment.

25. The terms and conditions of the Loan Documents are fair and reasonable and were negotiated extensively by represented parties with no prior relationship in good faith and at arms' length. Accordingly, DSL and all obligations incurred under the Note should be accorded the benefits and protections of Section 364(e) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

26. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant to DSL the liens described above to perform such acts as may be requested to assure a first priority lien on the DIP Collateral and affords DSL rights upon the termination of the Note; (ii) execute such other documents as may be required to effectuate the financing and (iii) implement the terms of the proposed Final DIP Order.

27. Stay modifications of this kind are ordinary features of post-petition financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.

**Notice**

28. The Debtor has provided notice of this Motion pursuant to Bankruptcy Rule 4001(c)(1)(C) to (the "Notified Parties"): (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) all secured parties, including (i) La Potencia, LLC; and (ii) the Internal Revenue Service; (c) all applicable taxing authorities; (d) the Debtor's twenty largest creditors; and (e) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submits that no further notice is necessary.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted and grant such other and further relief as is just and proper.

Dated: March 1, 2019                                SMITH KANE HOLMAN, LLC


By:   /s/ David B. Smith
David B. Smith, Esquire
112 Moores Road, STE 300
Malvern, Pa 19355
(610) 407-7217
dsmith@skhlaw.com
Counsel for the Debtor